EDWARD VALVES, INC., A DELAWARE CORPORATION v. WAKE COUNTY, AND EMMETT CURL, IN HIS CAPACITY AS WAKE COUNTY ASSESSOR

No. 34PA95

(Filed 13 June 1996)

**Constitutional Law § 86 (NCI4th)— tax assessment—42 U.S.C. 1983—substantive constitutional claim—state remedies**

An action for direct judicial review of a tax assessment claim under N.C.G.S. § 105-381 which included a claim under 42 U.S.C. § 1983 based upon equal protection arising from the ad valorem assessment of engineering drawings following the sale of the assets of a company was remanded where the trial court had entered summary judgment for Wake County on Edward Valves' claim that the tax assessments on engineering drawings as administered and enforced by the county assessor under color of state law violates the company's rights under the Equal Protection Clause of the Fourteenth Amendment. Although Wake County contends that the taxpayer is not entitled to relief under section 1983 because the taxpayer has plain, adequate and complete remedies for appeals from taxes under the North Carolina Machinery Act, a taxpayer may pursue remedies under 42 U.S.C. § 1983 regardless of the state statutory or administrative remedies provided by the North Carolina Machinery Act where the taxpayer asserts civil rights violations under 42 U.S.C. § 1983 based upon a substantive constitutional right.

**Am Jur 2d, Civil Rights §§ 3, 4.**

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of a constitutional question pursuant to N.C.G.S. § 7A-30 of a unanimous decision of the Court of Appeals, 117 N.C. App. 484, 451 S.E.2d 641 (1995), reversing judgment entered by Farmer, J., on 1 December 1993 in Superior Court, Wake County. Heard in the Supreme Court 17 November 1995.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Pressly M. Millen, for plaintiff-appellee.*

*Shelley T. Eason, Deputy County Attorney, for defendant-appellants.*

*Johnson, Mercer, Hearn & Vinegar, P.L.L.C., by Charles H. Mercer, Jr., on behalf of North Carolina Citizens for Business and Industry, amicus curiae.*

EDWARD VALVES, INC. v. WAKE COUNTY

[343 N.C. 426 (1996)]

*Johnson, Mercer, Hearn & Vinegar, P.L.L.C., by Samuel H. Johnson, on behalf of Capital Associated Industries, Inc., amicus curiae.*

*Smith Helms Mulliss & Moore, L.L.P., by Charles F. Bowman, on behalf of The Charlotte Chamber of Commerce, Inc., and its Manufacturing Council, amicus curiae.*

ORR, Justice.

This case arises out of the sale of assets by plaintiff Edward Valves, Inc. ("Taxpayer") to BTR-Dunlop, Inc. and concerns the alleged overassessment of Taxpayer's personal and real property for tax year 1990. Since 1964, Taxpayer has manufactured specialty valves for the nuclear and fossil fuel power plant industry in a manufacturing facility located in Raleigh, North Carolina. Until 10 March 1989, Taxpayer operated as a part of the Measurement and Flow Control Division of Rockwell International. On that date, all of Taxpayer's assets were sold to BTR-Dunlop, Inc., and as a result of that sale, Taxpayer became a separate Delaware corporation.

Because the sale to BTR-Dunlop, Inc. was an asset sale, Taxpayer was required by federal tax law to allocate the consideration paid for all of the purchased assets. In connection with that process, the firm of American Appraisal Associates, Inc. appraised all of Taxpayer's assets, including approximately 200,000 engineering drawings Taxpayer had created since 1908 and retained at the Raleigh facility. These engineering drawings are custom-made and contain technical engineering specifications needed to create a particular valve as required by its customers. As a result of the appraisal conducted by American Appraisal, the reproduction costs of the drawings were determined to be $12,827,900. The drawings were then placed on the balance sheet and federal income tax records of the "new" Taxpayer corporation at that value.

Prior to the sale of Taxpayer to BTR-Dunlop, Inc., the cost of creating the drawings was treated as a current expense by the company and written off by the company as a current cost of doing business. Because the drawings had been expensed in the past, they had never before appeared on the company balance sheet or federal income tax records.

Under the assessment methodology used by the Wake County Assessor's Office, a business' intangible personal property and self-

created intellectual property are taxed only if they are capitalized on the business' books. Defendant Wake County takes the capitalized cost—the cost shown on the books—and depreciates that cost on a straight-line basis according to the life of the asset as determined by the taxpayer. If an asset is not reflected on the business' books, it is not taxed by Wake County.

The 1990 Wake County Business Property Listing form furnished by Wake County to Taxpayer and all other businesses did not contain a schedule for the listing of intangible business property or any instructions concerning the listing of such property. Defendant Wake County made no concerted effort to discover intangible business property. According to Richard Jones, the Assistant Assessor in charge of the Personal Property and Audit Divisions within the Assessor's Office, neither he nor the business auditors had been trained in the taxation of intangible or self-created intellectual property, nor had the State Department of Revenue or any other state department or agency provided the Assessor's Office with any written guidelines or instructional materials concerning how to tax such property. In fact, the Business Personal Property Appraisal Manual provided to defendants by the Ad Valorem Section of the Property Tax Division of the North Carolina Department of Revenue states that "intangible property may represent tremendous value; however, it is usually not subject to physical measurements." Further, the manual states that "[w]here a new owner will acquire an existing business," such an acquisition can occur as either a stock sale or an asset sale but that "[i]n each case, our first goal in making our appraisal is to use the actual historical cost." Counties are explicitly warned against "using selling price as the determinant of value." Finally, the Assessor's Office itself had adopted no written guidelines concerning the taxation of intangible and self-created intellectual property; none had been furnished to the County's auditors; and Jones was aware of no county in North Carolina, other than Wake County, which seeks to tax intangible personal property or seeks to have a taxpayer list such property.

As a result of the asset acquisition, Taxpayer's Wake County business property listing for ad valorem tax purposes for tax year 1990 changed substantially. Whereas, under the 1989 listing, Taxpayer reported fixed assets at a cost of $27,581,804, those same fixed assets, with the exception of $593,457 in additional fixed assets added in 1989 and $120,000 disposed of during that same year, were listed at a cost of $40,015,802 on Taxpayers' 1990 Wake County Business

Property Listing form. Included in those fixed assets was the $12,827,900 in engineering drawings. Taxpayer listed the engineering drawings and their values on the Wake County listing forms because it was informed by the Wake County Assessor's Office that it was required to use the new acquisition cost rather than the historical cost and that the engineering drawings had to be listed if they were on Taxpayer's books. As a result of the County's use of the new acquisition costs rather than the historical costs of the engineering drawings, Taxpayer's property tax bill increased by $390,082, with over $190,000 of the increase attributable to the value of the engineering drawings. The total amount of assessed value of all other discovered intangible property for tax year 1990 in Wake County was $2,414,926; of that amount, apart from that paid by Taxpayer, only $479,186 in total assessed value of intangible property actually had taxes paid on it. Thus, Taxpayer's engineering drawings resulted in a payment on an assessed value of more than twenty-seven times greater than the total amount paid by all other businesses on intangible property in Wake County combined for the tax year 1990.

After receiving the increased tax bill, Taxpayer attempted to file an amended listing using the historical costs, but Wake County rejected this amendment. After the Assessor's Office rejected the attempted amendment, Taxpayer timely paid the assessed taxes under protest and made a formal post-payment request for refund on the grounds that it had erroneously listed the engineering drawings.

In addition to the dispute surrounding the engineering drawings, Taxpayer had earlier served its appeal on the Wake County Board of Equalization and Review concerning its 1990 real property assessment. Notwithstanding the service of the appeal, Taxpayer was never given a hearing on the assessment of its real property by the Wake County Board of Equalization and Review because, according to defendant Wake County's records, the appeal was unperfected.

After defendant Wake County denied Taxpayer's request for refund, Taxpayer brought this action against defendant Wake County and Emmett Curl in his capacity as Wake County Assessor (collectively, "defendant Wake County") under N.C.G.S. § 105-381(2), which allows a taxpayer to seek judicial review of an assessment directly in Superior Court by paying taxes and then bringing suit against the taxing unit for refund of taxes paid if the assessment was a tax imposed through clerical error, an illegal tax, or a tax levied for an illegal purpose. In addition, Taxpayer brought the action under 42 U.S.C. § 1983.

In its complaint, Taxpayer asserts, among other allegations, the following: (1) that the taxes assessed are illegal on the grounds that defendant Wake County does not uniformly assess intangible personal property, such as Taxpayer's engineering drawings, for taxation, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the uniformity of taxation requirements of Article V, Section 2(2) of the North Carolina Constitution; (2) that Taxpayer listed the value of its engineering. drawings by mistake and that such listing constituted "clerical error" justifying refund under N.C.G.S. § 105-381(a)(1)(a); (3) that the listing form used by defendant Wake County fails to specify intangible business property as taxable property to be listed; (4) that pursuant to 42 U.S.C. § 1983, the tax assessments on the engineering drawings administered and enforced by the County Assessor under color of state law violates the company's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution; and (5) that Taxpayer's real property was overvalued, and the County wrongfully denied its right to appeal the 1990 real property assessment to the County Board of Equalization and Review.

The trial court entered summary judgment as to these claims in favor of defendant Wake County and dismissed the action. Subsequently, Taxpayer appealed to the Court of Appeals, contending that the engineering drawings were "self-created intangible property" which defendant Wake County taxed only when a business was sold; therefore, defendant Wake County's assessment methodology violated constitutional requirements of uniformity and equal protection.

The Court of Appeals reversed the trial court's determination, holding that defendant Wake County's "methodology for taxing self-created intangible property is unconstitutional under both the Federal and State Constitutions and also violates North Carolina General Statutes § 105-284(a) and 42 [U.S.C.] § 1983." *Edward Valves, Inc. v. Wake Co.*, 117 N.C. App. 484, 493, 451 S.E.2d 641, 647 (1995). The Court of Appeals held that the tax was an illegal tax under N.C.G.S. § 105-381 because defendant Wake County's assessment methodology was based on a "purposeful, though somewhat informal, classification based upon an improper distinction between taxpayers who owned the same class of property, self-created intangibles that have been sold and similar intangibles that have not been sold." *Id.* at 492, 451 S.E.2d at 647. The Court of Appeals also reversed the trial

**EDWARD VALVES, INC. v. WAKE COUNTY**

[343 N.C. 426 (1996)]

court's order granting summary judgment in favor of defendant Wake County on Taxpayer's real property claim. The Court of Appeals remanded the action for further proceedings consistent with its opinion.

On 20 January 1995, defendant Wake County filed a petition for a writ of supersedeas under Rule 23 of the North Carolina Rules of Appellate Procedure and a motion for temporary stay, which was allowed on 9 February 1995. On 6 February 1995, defendant Wake County filed a petition for discretionary review pursuant to N.C.G.S. § 7A-31 and a notice of appeal of a constitutional question pursuant to N.C.G.S. § 7A-30. On 20 February 1995, Taxpayer filed a motion to dismiss defendant Wake County's appeal and response to petition for discretionary review. On 6 April 1995, this Court granted defendant's petition for discretionary review, denied Taxpayer's motion to dismiss, granted the requested writ of supersedeas of the judgment of the Court of Appeals, and dissolved the temporary stay.

On appeal to this Court, defendant Wake County presents three issues for review: With respect to the issue of whether the Court of Appeals erred in holding that the County's taxation of Taxpayer's engineering drawings constitutes an illegal tax in violation of the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV, and uniformity requirements of Article V, Section 2(2) of the North Carolina Constitution, N.C. Const. art. V, § 2(2), we hold that discretionary review was improvidently allowed. With respect to the issue of whether the Court of Appeals erred in reversing the trial court's order dismissing Taxpayer's real property claim, we again hold that discretionary review was improvidently allowed.

The sole issue remaining before this Court is whether 42 U.S.C. § 1983 is an available avenue of relief upon which Taxpayer may base his equal protection claim. Defendant Wake County contends that Taxpayer is not entitled to relief under Section 1983 because, under *Johnston v. Gaston Co.*, 71 N.C. App. 707, 323 S.E.2d 381 (1984), *disc. rev. denied*, 313 N.C. 508, 329 S.E.2d 392 (1985), and *Snuggs v. Stanly Co. Dep't of Pub. Health*, 310 N.C. 739, 314 S.E.2d 528 (1984), Taxpayer has "plain, adequate and complete" remedies for appeals from taxes under the North Carolina Machinery Act. According to defendant Wake County, *Snuggs* and *Johnston* hold that absent an allegation or evidence demonstrating that a taxpayer does not have "plain, adequate or complete" remedies at state law, a taxpayer who challenges his property tax assessment cannot pursue a Section 1983

claim in state court. Defendant contends that the taxpayer must seek relief by exhausting state law remedies either by pursuing administrative remedies under N.C.G.S. § 105-345 or by paying the taxes owed and then bringing suit directly in Superior Court for a refund of taxes paid pursuant to N.C.G.S. § 105-381.

Under the North Carolina Machinery Act, a taxpayer may seek relief from an unjust property tax assessment by pursuing one of two avenues: (1) administrative review under N.C.G.S. § 105-322(g)(2) and N.C.G.S. § 105-324; followed by judicial review in the North Carolina Court of Appeals, N.C.G.S. § 105-345 (1995); and then to the North Carolina Supreme Court, N.C.G.S. § 105-345.4 (1995); or, in the alternative, (2) direct judicial review in Superior Court, by paying taxes and then bringing a suit against the taxing unit for recovery of taxes paid pursuant to N.C.G.S. § 105-381.

Section 1983 of Title 42 of the United States Code provides that

[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994). To state a claim under Section 1983, a plaintiff must show actual deprivation of a federal right "under color of law." *See Temkin v. Frederick Co. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095, 117 L. Ed. 2d 417 (1992). Federal rights are those secured by the United States Constitution and federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 65 L. Ed. 2d 555 (1980). "But in any given § 1983 suit, plaintiff must prove the underlying constitutional claim." *Daniels v. Williams*, 474 U.S. 327, 330, 88 L. Ed. 2d 662, 667 (1986).

In this case, Taxpayer has sought relief in its complaint from illegal taxes based upon state law under N.C.G.S. § 105-381—direct judicial review—seeking "a refund of taxes, with interest, paid on the engineering drawings." Taxpayer has also sought relief from illegal taxes based upon a separate federal law claim under 42 U.S.C. § 1983, seeking "damages in the amount of taxes illegally assessed and paid, plus interest, plus attorney's fees as provided by 42 U.S.C. § 1988." We

**EDWARD VALVES, INC. v. WAKE COUNTY**

[343 N.C. 426 (1996)]

note that, while Taxpayer's Section 1983 claim as alleged in the complaint is based on a violation of both its equal protection *and* due process rights under the Fourteenth Amendment to the United States Constitution, on appeal, Taxpayer seeks ‘appellate review of its Section 1983 claim based solely on equal protection.

The Equal Protection Clause of the Fourteenth Amendment provides: No State shall "deny any person within its jurisdiction the equal protection of the laws." "The purpose of the [E]qual [P]rotection [C]lause of the 14th Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 352-53, 62 L. Ed. 1154, 1155-56 (1918) (issue involving denial of equal protection of the laws by the Michigan state board of tax assessors, which assessed the plaintiff's property for 1911 at full value but had assessed other lands throughout the county at one-third of their actual value). Thus, as early as 1918, the United States Supreme Court explicitly recognized the role of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in circumscribing the taxing authorities of the states, their political subdivisions, and their agents.

Here, the Court of Appeals held that "the Wake County methodology for taxing self-created intangible property is unconstitutional under both the Federal and State Constitutions and also violates North Carolina General Statutes § 105-284 and 42 [U.S.C.] § 1983." *Valves*, 117 N.C. App. at 493, 451 S.E.2d at 647. We have held above that discretionary review was improvidently allowed on the issue of whether the taxation of Taxpayer's engineering drawings violates its equal protection rights. To that extent, there is no question left as to the unconstitutionality of the County's assessment methodology. *Cf. Snowden v. Hughes*, 321 U.S. 1, 8, 88 L. Ed. 497, 502-03 (1944) (listing as a "familiar example" of a denial of equal protection "a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of the law is the same as though the discrimination were incorporated in and proclaimed by the state"). We turn to the question now before us—the propriety of Taxpayer's Section 1983 claim. Can Taxpayer pursue Section 1983 remedies in addition to the state law remedies provided by the North Carolina Machinery Act? We conclude that Taxpayer can.

"[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983." *Zinermon v. Burch*, 494 U.S. 113, 124, 108 L. Ed. 2d 100, 113 (1990).

> "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."

*Id.* (quoting *Monroe v. Pape*, 365 U.S. 167, 183, 5 L. Ed. 2d 492, 503 (1961), *overruled on other grounds by Monell v. Department of Social Servs. of N.Y.*, 436 U.S. 658, 56 L. Ed. 2d 611 (1978)). "[L]egislative enactments . . . [such as 42 U.S.C. § 1983] have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 39 L. Ed. 2d 147, 158 (1974).

However, "the type of Fourteenth Amendment interest that is implicated has important effects on the nature of the constitutional claim and the availability of § 1983 relief." *Daniels*, 474 U.S. at 337, 88 L. Ed. 2d at 672 (Stevens, J., concurring). State remedies are only relevant when a Section 1983 action is brought for a violation of procedural due process. *See Zinermon*, 494 U.S. at 125-26, 108 L. Ed. 2d at 114; *see also Daniels*, 474 U.S. at 337, 88 L. Ed. 2d at 672-73 (Stevens, J., concurring). Under that circumstance,

> the constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute . . . .

*Zinermon*, 494 U.S. at 125-26, 108 L. Ed. 2d at 114. On the other hand, in a Section 1983 action based on a violation of a substantive constitutional right,

> "regardless of the fairness of the procedures used to implement them," the constitutional violation is complete as soon as the prohibited action is taken; the independent federal remedy is then authorized by the language and legislative history of § 1983.

*Daniels*, 474 U.S. at 338, 88 L. Ed. 2d at 673 (Stevens, J., concurring); *see Zinermon*, 494 U.S. at 125, 108 L. Ed. 2d at 113.

Here, Taxpayer's Section 1983 action is based solely on a violation of equal protection—a substantive violation. In view of the foregoing authority, we are compelled to conclude that where, as in the present case, a taxpayer asserts civil rights violations under Section 1983 based upon a substantive constitutional right, he or she may pursue Section 1983 remedies regardless of the state statutory or administrative remedies provided for by the North Carolina Machinery Act. *See Williams v. Greene*, 36 N.C. App. 80, 84, 243 S.E.2d 156, 159 ("[A]s a general rule[,] the failure of a plaintiff to exhaust his state administrative remedies has not been considered a bar to a claim asserted under § 1983."), *disc. rev. denied and appeal dismissed*, 295 N.C. 471, 246 S.E.2d 12 (1978). We note, however, that on remand to the trial court, Taxpayer may only recover the amount of taxes illegally assessed once.

We also note that the Court of Appeals' decision that Taxpayer may attack the constitutionality of the assessment methodology in a Section 1983 action in state court was based upon language found in the cases of *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428 (2d Cir. 1989), and *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 70 L. Ed. 2d 271 (1981). However, because *Long Island Lighting Co.* and *Fair Assessment* involved the propriety of initiating a Section 1983 action in *federal court* prior to exhausting remedies available in *state court*, we find these two cases on which our Court of Appeals relied inapplicable.

For the foregoing reasons, we hold that Taxpayer's Section 1983 claim is not barred. Thus, the Court of Appeals was correct in reversing the trial court's grant of summary judgment for defendant Wake County with respect to Taxpayer's Section 1983 claim based upon equal protection.

DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART; AFFIRMED AS MODIFIED IN PART AND REMANDED.