IN THE MATTER OF: NICHOLAS R. ROBERTS AND THE BUNCOMBE COUNTY
BOARD OF EDUCATION

No. COA01-557

(Filed 7 May 2002)

### 1. Schools and Education— due process—board of education hearing board—legal counsel not allowed

The trial court correctly reversed a board of education hearing board decision to suspend a student for the remainder of the semester for statements that were vulgar and suggestive where both the facts and the nature of the conduct were disputed, petitioner was subjected to a long term suspension from school, and he was not permitted an attorney at the hearing. Due Process requires that petitioner have the opportunity to have counsel present, to confront and cross-examine witnesses, or to call his own witnesses.

### 2. Schools and Education— due process—school suspension—hearing without counsel—remedy

Although respondent argued that the appropriate remedy for the superior court to apply to a due process violation by a board of education hearing board was remand rather than reversal, N.C.G.S. § 150B-51(b) specifically states that the reviewing court may reverse the agency's decision if the substantial rights of petitioners may have been prejudiced.

Appeal by respondent from order entered 29 January 2001 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 20 February 2002.

*Paul Louis Bidwell, for petitioner-appellee.*

*Root & Root, P.L.L.C. by Allan P. Root, for respondent-appellant.*

TYSON, Judge.

The Buncombe County Board of Education ("respondent") appeals from an order reversing its decision to suspend Nicholas R. Roberts ("petitioner") from school for the remainder of the Fall 1996 semester.

**IN RE ROBERTS**

[150 N.C. App. 86 (2002)]

## I. Facts

On 11 October 1996, petitioner was a sophomore at A.C. Reynolds High School in Buncombe County, North Carolina. While in his first period English class, petitioner was preparing to play a board game. When petitioner asked the teacher if he could be paired with two particular classmates, another student, Chris Meeks ("Meeks") stated "Hey Nick! Juanita [Plemmons] wants to be your partner." Petitioner then walked up to the table where Juanita Plemmons ("Plemmons") was seated, pushed the lower part of his body into her face, grabbed his crotch, and told her "I'll be your partner anytime, and put 'deeze nuts' in your mouth." Petitioner then walked away to play the board game at another table.

Plemmons did not hear petitioner's statement. Plemmons stated that because she was embarrassed upon seeing petitioner grab his crotch, she closed her eyes, put her head down, and covered her ears with her hands. Three students who were seated nearby, Meeks, Adam Lowe ("Lowe"), and John Hefner ("Hefner"), informed Plemmons of the statement made by petitioner. Later that afternoon, Plemmons reported the incident to Assistant Principal Richard Pierce ("Pierce"), who conducted an investigation by taking the statements of several students. Meeks, Lowe, and Hefner all confirmed the incident as reported by Plemmons. Four other students stated that although they were seated near Plemmons, they neither saw nor heard petitioner make any offensive gestures or comments.

After obtaining the student's statements, Pierce called petitioner into his office and informed him of the complaint against him. When asked his version of the events, petitioner admitted that he walked over to the table where Plemmons was seated and said that he would like to be her partner, but petitioner denied making any offensive gestures or statements. Later, however, petitioner admitted grabbing his crotch and saying "deeze nuts," but he claimed that the gesture and statement was directed toward Meeks, who had previously insulted him. According to petitioner, "deeze nuts" was an expression commonly used by the students and was similar to "kiss my butt."

Following his investigation, Pierce brought the incident to the attention of Principal Ronald L. Dalton ("Dalton"). Dalton reviewed the statements and concluded that petitioner violated Board Policy 461 regarding sexual harassment which provides in pertinent part:

Sexual harassment of students is defined as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when:

. . . .

(3) The harassment has a purpose or effect of unreasonably interfering with an individual's academic performance or creating an intimidating, hostile, or offensive learning environment.

Dalton suspended petitioner for five days, with a recommendation to the Reynolds District Hearing Board ("Hearing Board") that he be suspended through the end of the school semester. Dalton notified petitioner's parents of this decision and recommendation by letter dated 11 October 1996.

A hearing was conducted before the Hearing Board on 14 October 1996. The Hearing Board adopted Dalton's recommendation, suspending petitioner for the duration of the 1996 Fall semester. The Superintendent for the Buncombe County School System approved the recommendation that petitioner be suspended for the remainder of the semester. Petitioner appealed the decision to respondent pursuant to N.C.G.S. § 115C-391(e). On 7 November 1996, respondent conducted a review hearing and made the following determination regarding petitioner's conduct:

The Board of Education does not believe that [petitioner's] behavior was intended to be "sexual harassment," however, the Board feels that his actions and words were both vulgar and obscene, and had the effect of creating an intimidating and offensive learning environment.

Respondent issued a letter, dated 22 November 1996, to petitioner's mother upholding the suspension for the duration of the school semester.

Petitioner filed a petition for judicial review with the Buncombe County Superior Court on 20 December 1996, pursuant to N.C.G.S. §§ 115C-391(e), 150B-43, and 150B-45. The superior court entered a judgment reversing respondent's decision on 28 October 1997. Respondent appealed to this Court. In the prior opinion of this Court, filed 6 April 1999, we reversed the decision and remanded for the entry of an order setting forth the standard of review applied. The superior court, on remand, entered an amended order on 29 January 2001 reversing the decision of respondent. Respondent appeals.

## II. Issues

The controlling issues raised on appeal are whether: (1) the superior court erred in concluding that Board Policy prohibiting an attorney's presence at the Hearing Board constitutes a denial of due process and (2) the superior court applied an incorrect remedy in reversing the decision.

## III. Standard of Review

The decision of the local board of education in disciplining any student may be appealed to the superior court of the county where the local board made its decision in accordance with Article 4 of Chapter 150B of the General Statutes. N.C. Gen. Stat. § 115C-391(e) (1999). The standard of review on appeal from a decision of a local board of education is set forth in N.C.G.S. § 150B-51(b) which provides that the court reviewing a final decision may:

> reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions or decisions are:

> (1) In violation of constitutional provisions; (2) In excess of the statutory authority or jurisdiction of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2000).

The proper standard for the superior court's judicial review "depends upon the particular issues presented on appeal." *Amanini v. North Carolina Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). When the petitioner contends that the decision of the agency, here the local school board, was unsupported by the evidence or was arbitrary or capricious, then the reviewing court must apply the "whole record" test. *In re McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion."

*Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990) (citation omitted). When the petitioner argues that the decision of the agency violates a constitutional provision, the reviewing court is required to conduct a *de novo* review. *In re Ramseur*, 120 N.C. App. 521, 526, 463 S.E.2d 254, 257 (1995).

As to appellate review of a superior court order regarding an agency decision, "the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118-19 (citations omitted).

## IV. Due Process

[1] Here, petitioner alleged that respondent's decision is based on an error of law in that his state and federal constitutional rights of Due Process were violated when he was denied legal representation at the Hearing Board. When petitioner alleges that the agency's decision, here the local school board, is based on an error of law, the proper review is *de novo* review. *Ramseur*, 120 N.C. App. at 526, 463 S.E.2d at 257. "De novo review requires the court to " 'consider a question anew, as if not considered or decided by the agency previously. . . .'" and to "make its own findings of fact and conclusions of law . . ." rather than relying upon those made by the agency. *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000) (citation omitted).

The superior court's amended order states that its review was "of the whole record de novo." While "whole record" and *de novo* are separate tests to be applied upon differing issues, the superior court entered a finding of fact that pursuant to Board Policy 460 "Petitioner's attorney was denied access to the hearing room to advise and counsel the Petitioner or his parents. A non-parent adult is permitted in the hearing room upon request of the Petitioner." The superior court reviewed Board Policy 460 which provides in pertinent part:

Adult Representation in Addition to or in Lieu of Parents. If the parents cannot be present or if the student or his parents think his interests can be protected better by the presence of another adult in addition to the parents, the student may bring another

adult to the hearing. If the parents are present, the non-parent adult may advise the student, but he may not examine witnesses, make any statement, or in any way actively represent the student before the board. . . . The non-parent adult may not be an attorney.

The superior court then concluded that "[t]he failure of the Reynolds District Hearing Board to allow the mere presence of the Petitioner's attorney as a non-parent adult and the provision of the Board Policy prohibiting an attorneys presence under any circumstance constitutes a denial of due process to the Petitioner . . . ." We conclude that the superior court utilized the correct standard of review. *See Sun Suites Holding v. Town of Garner*, 139 N.C. App. 269, 273, 533 S.E.2d 525, 528 (2000) (more than one standard of review may be used if required, but the standards are to be applied separately) (citations omitted). We review *de novo* the propriety of respondent's policy and the superior court's reversal.

Respondent argues that the superior court's conclusion is erroneous and relies on *Wimmer v. Lehman*, 705 F.2d 1402 (4th Cir. 1983), to support its argument that petitioner was not denied due process. However, *Wimmer* is distinguishable from this case. In *Wimmer*, the petitioner, a cadet at the Naval Academy, was an adult. Even though the petitioner was required to make his own arguments and cross-examine the witnesses, he was permitted to have his attorney present at the hearing. In contrast, petitioner in the present case was a high school student, a minor, and was not permitted to have counsel present at the evidentiary hearing before the Hearing Board.

In *Matthews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976), the United States Supreme Court set forth three factors to be considered in determining what process is due when an individual is faced with the deprivation of a property interest:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

The North Carolina Constitution provides that "[t]he people have a right to the privilege of education . . . ." (Article 1, § 15). The United

States Supreme Court has stated that a student facing suspension has a property interest that qualifies for protection under the Due Process Clause of the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 576, 42 L. Ed. 2d 725, 735-36 (1975) (citations omitted). "A student's interest in obtaining an education has been given substantive and procedural due process protection." *Warren County Bd. of Educ. v. Wilkinson*, 500 So.2d 455, 459 (Miss. 1986) (citing *Plyler v. Doe*, 457 U.S. 202, 217, 72 L. Ed. 2d 786 (1982); *Bolling v. Sharpe*, 347 U.S. 497, 500, 98 L. Ed. 2d 884 (1954); *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 400, 67 L. Ed. 1042 (1923)).

"The student's interest is to avoid unfair or mistaken exclusion from the educational process. . . ." *Goss*, 419 U.S. at 579, 42 L. Ed. 2d at 737. We acknowledge that the State has a substantial interest in maintaining security and order in the schools. "[O]ur schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed. Events calling for discipline are frequent occurrences and sometimes require immediate, effective action. Suspension is considered not only to be a necessary tool to maintain order but a valuable educational device." *Id.* at 580, 42 L. Ed. 2d at 738.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is applicable to long-term suspensions. *See Pervis v. LaMarque Ind. School Dist.*, 466 F.2d 1054 (5th Cir. 1972) (due process applicable to indefinite suspensions); *Sullivan v. Houston Ind. School Dist.*, 475 F.2d 1071 (5th Cir. 1973) (due process applicable to the addition of a 30-day suspension to a 10-day suspension).

In the present case, petitioner was subjected to a long-term suspension from school, for the remainder of the Fall 1996 semester, based on the reports of other students. The facts and the nature of the conduct were all disputed. For these very same reasons, the Court in *Goss* stated that "[t]he risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." *Goss*, 419 U.S. at 580, 42 L. Ed. 2d at 738. The Hearing Board and respondent's claim that petitioner's conduct constituted harassment turned upon a factual adjudication before the Hearing Board. Respondent concedes that the better practice would be to permit attorney representation before the Hearing Board. We agree. The protections of due process require that

IN RE ROBERTS

[150 N.C. App. 86 (2002)]

petitioner be apprised of the evidence received and given an opportunity to explain or rebut it. *See Givens v. Poe*, 346 F. Supp. 202, 209 (W.D.N.C. 1972) (where exclusion or suspension for any considerable period of time is a possible consequence of proceedings, modern courts have held that due process requires notice; a full hearing; the right to examine the evidence, the witnesses, and the right to present evidence; and the right to be represented by counsel.)

Under the facts of this case, where respondent sought to impose a long-term suspension and the Board Policy specifically provided for a factual hearing before the Hearing Board, we construe the Due Process Clause of the United States Constitution, applicable to the States through the Fourteenth Amendment, to require that petitioner have the opportunity to have counsel present, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. *Id.* We hold that respondent's decision for long-term suspension of petitioner was affected by error of law.

## V. Remedy

[2] Respondent argues that even if the findings and conclusions of the superior court are upheld, the appropriate remedy was to remand the matter to the Board of Education for further proceedings. We disagree.

N.C.G.S. § 150B-51(b) specifically states that the court reviewing the final decision may reverse the agency's decision "if the substantial rights of the petitioners may have been prejudiced . . . ." N.C. Gen. Stat. § 150B-51(b). This argument is overruled.

## VII. Conclusion

We hold that petitioner's substantial rights have been violated. Under the facts of this case petitioner's due process rights were violated. We need not address respondent's remaining assignments of error. We affirm the reversal of respondent's decision by the superior court.

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.