ANGELL COPPER, BY HIS MOTHER AND GUARDIAN AD LITEM, SHERRY COPPER; DESMOND JOHNSON, BY HIS FATHER AND GUARDIAN AD LITEM, WILMER JOHNSON; ERIC WARREN AND DION WARREN, BY THEIR MOTHER AND GUARDIAN AD LITEM, DEANN WARREN; JOSHUA THORPE, BY HIS MOTHER AND GUARDIAN AD LITEM, TRECO THORPE; TODD DOUGLAS, DECEASED, BY HIS MOTHER AND ADMINISTRATRIX OF HIS ESTATE, SHERYL SMITH; DEANTONIO RHODES, BY HIS MOTHER AND GUARDIAN AD LITEM, LINDA RHODES; JAZMYN JENKINS; AND GINA SOLARI; AS INDIVIDUALS AND AS REPRESENTATIVES OF THE CLASS OF SIMILARLY SITUATED DURHAM PUBLIC SCHOOL STUDENTS v. ANN T. DENLINGER, INDIVIDUALLY AND AS SUPERINTENDENT OF DURHAM PUBLIC SCHOOLS; THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; GAIL HEATH, INDIVIDUALLY AND AS CHAIR OF THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; HEIDI CARTER, STEVE MARTIN, AND STEVE SCHEWEL, INDIVIDUALLY AND AS MEMBERS OF THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; LARRY MCDONALD, INDIVIDUALLY AND AS FORMER PRINCIPAL OF SOUTHERN HIGH SCHOOL; RICHARD WEBBER, INDIVIDUALLY AND AS PRINCIPAL OF C.E. JORDAN HIGH SCHOOL; RODRIQUEZ TEAL, INDIVIDUALLY AND AS PRINCIPAL OF SOUTHERN HIGH SCHOOL; WORTH HILL, DURHAM COUNTY SHERIFF; AND R.A. SIPPLE AND JOSEPH COSTA, INDIVIDUALLY, AS AGENTS AND EMPLOYEES OF THE DURHAM COUNTY SHERIFF, AS AGENTS OF THE SUPERINTENDENT OF DURHAM PUBLIC SCHOOLS, AND AS AGENTS OF THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION

No. 526A08

(Filed 29 January 2010)

**1. Civil Rights— schools—gang policy—suspension**

Plaintiff student did not sufficiently state a direct constitutional claim for relief from a suspension under a public school's gang policy where an adequate state remedy existed through appeals provided by statute. The complaint did not allege facts or events indicating that anyone took action to prevent pursuit of an appeal, that the student or his mother sought further appeal after a meeting with school officials, or that it would have been futile to attempt to appeal his suspension to the board.

**COPPER v. DENLINGER**

[363 N.C. 784 (2010)]

**2. Civil Rights— gang policy—school suspension—claim not stated**

  A complaint arising from a suspension under a public school's gang policy was not sufficient as a matter of law to state a claim for relief for violation of federal due process rights where the student's own allegations revealed that he and his mother failed to avail themselves of the due process offered under state law.

  Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 193 N.C. App. 249, 667 S.E.2d 470 (2008), affirming in part and reversing in part an order entered 5 October 2006 by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County, and remanding for further proceedings. On 5 February 2009, the Supreme Court allowed defendants' petition for discretionary review of additional issues. Heard in the Supreme Court 5 May 2009.

*Frances P. Solari for plaintiff-appellees.*

*Tharrington Smith, LLP, by Ann L. Majestic and Christine Scheef, for Durham Public Schools Board of Education; and Cranfill, Sumner & Hartzog, L.L.P. for Ann T. Denlinger, defendant-appellants.*

*Allison B. Schafer, General Counsel, for North Carolina School Boards Association, amicus curiae.*

*North Carolina Justice Center, by Jack Holtzman, for North Carolina Justice Center, ACLU of North Carolina Legal Foundation, Advocates For Children's Services Of Legal Aid Of North Carolina, North Carolina State Conference of NAACP Branches, Triangle Lost Generation Task Force, and North Carolina Black Leadership Caucus, amici curiae.*

HUDSON, Justice.

  On 24 March 2006, plaintiffs, Durham public high school students or their parents,[1] filed a purported class action complaint[2] in Su-

---

  1. As for student Todd Douglas, who was deceased at the time the lawsuit was filed, his mother, Sheryl Smith, was named plaintiff as administratrix of his estate. For ease of reference, we refer to his claims as "the Douglas claims" in this opinion.

  2. The class has not been certified.

**COPPER v. DENLINGER**

[363 N.C. 784 (2010)]

perior Court, Durham County, seeking compensatory and punitive damages, a declaratory judgment, and injunctive relief against the Durham Public Schools Board of Education (the "Board"), Board secretary and Durham Public Schools Superintendent Ann Denlinger in her official and individual capacities, and various other individuals later dismissed from the suit. According to the allegations in the complaint, the Board, Ms. Denlinger, school principals, and other individuals affiliated with public high schools in Durham had subjected minority students "to more severe disciplinary measures for less serious offenses than white students," including imposing school suspensions "without due process of law," and had "[f]alsely and indiscriminately label[ed]" minority students as " 'gang affiliated.' "

In connection with these factual allegations, plaintiffs contended that defendants had conspired "to deny minority students an equal educational opportunity in the Durham Public Schools." Plaintiffs asserted that, specifically with respect to school suspensions, defendants had violated several of plaintiffs' federal and state constitutional rights, including their rights to due process, equal protection, and a sound basic education. In seeking a declaratory judgment, plaintiffs argued that the Board's policy related to gangs "does not provide adequate notice to students of the precise conduct prohibited," "gives excessive subjective discretion to school officials and school resource officers to pick and choose what conduct by what students to punish," and "is unconstitutionally vague and therefore void and unenforceable."

On 5 October 2006, the trial judge dismissed all claims against the Board, Ms. Denlinger and the school board members, and the named school principals.[3] As to the particular claims before this Court, the trial court based the dismissals on the following grounds: (1) regarding the Douglas state constitutional claims against the Board for violating his right to procedural due process, an adequate state statutory remedy was available to challenge suspension decisions, and the student had failed to allege either that he had exhausted his administrative remedies or that these remedies were inadequate; (2) regarding the Douglas federal procedural due process claims under 42 U.S.C. § 1983, brought against Ms. Denlinger in her individual capacity, the student had failed to demonstrate that he had exhausted his administrative remedies or that Ms. Denlinger had violated rights "clearly

---

3. All other defendants, law enforcement officials including the Durham County Sheriff, were previously dismissed in an order entered 12 July 2006.

established" under federal law, thereby entitling Ms. Denlinger to qualified immunity in her individual capacity; and (3) regarding the Board's gang policy, it "defines a violation . . . with sufficient definiteness that a student could understand what conduct was prohibited and it established standards to permit enforcement in a non-arbitrary, non-discriminatory manner."

The Court of Appeals unanimously affirmed the trial court's dismissal of the majority of plaintiffs' claims against the majority of the named defendants. *Copper ex rel. Copper v. Denlinger*, 193 N.C. App. 249, 286, 667 S.E.2d 470, 495 (2008). The panel was divided in reversing the dismissal of the Douglas state constitutional claim against the Board, and his § 1983 claim against Ms. Denlinger in her individual capacity, for alleged violations of his procedural due process rights. *Id.* at 286-87, 667 S.E.2d at 495. Defendants appealed based on the dissent. Although the Court of Appeals unanimously reversed the dismissal of plaintiffs' claim concerning the Board's gang policy, *id.*, we allowed defendants' petition for discretionary review of that issue. We also allowed review of the question of whether a school board may be held liable for monetary damages under the state constitution for the actions of its employees. Because we find that plaintiffs have not stated a claim for relief under the state constitution, we do not reach this issue.

The central question we address is whether the allegations in the complaint are sufficient to state a claim for relief against the Board under the state constitution and against Ms. Denlinger in her individual capacity under § 1983 for violations of Douglas's constitutional right to procedural due process. After careful consideration of each of the complaint's allegations concerning these Douglas claims and his treatment by the school, we hold that he did not.

The complaint here contains allegations of disciplinary actions taken against nine Durham public high school students and includes nearly six hundred paragraphs. Of these, roughly seventy-five pertain to the Douglas claims. We have summarized the pertinent facts below using plaintiffs' own statements from the complaint, which we treat as true when reviewing an order dismissing a complaint under Rule 12(b)(6). *See, e.g., State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 442, 666 S.E.2d 107, 114 (2008) ("When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.") (quoting *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) (citation omitted))).

## State Constitutional Claim Against the Board

[1] To assert a direct constitutional claim against the Board for violation of his procedural due process rights, a plaintiff must allege that no adequate state remedy exists to provide relief for the injury. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 ("Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution."), *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992); *see also Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009) (noting that "an adequate remedy must provide *the possibility* of relief under the circumstances." (emphasis added)).

The complaint contends that the Board violated Douglas's state constitutional right to procedural due process by denying him a hearing before his long-term suspension from school. Because we find that an adequate state remedy exists to redress this alleged constitutional injury, we need not address whether the allegations in the complaint, when taken as true, would establish a violation of procedural due process under our state constitution. Indeed, our General Assembly has enacted two separate statutes that provide a means of redressing such an injury. Sections 115C-45(c) and 115C-391(e) allow an appeal to the Board, and then to superior court, "from any final administrative decision" related to student discipline and from a suspension lasting "in excess of 10 school days," respectively. N.C.G.S. §§ 115C-45(c), 391(e) (2007).

The complaint appears to suggest that Ms. Denlinger and Larry McDonald, the principal of Southern High School, purposely backdated correspondence to Douglas and his mother, Sheryl Smith, to convert what had effectively become a long-term suspension into a short-term suspension and thereby thwart his right to appeal to the Board. However, the complaint fails to allege any facts or events to the effect that the Board—or anyone else—actually took action to prevent the student or his mother from pursuing an appeal. Although the complaint maintains that Ms. Smith was told that she had no right to appeal a short-term suspension, it also reflects that she retained a new attorney upon learning this information, yet took no additional action at that time, despite her knowledge that her son had been out of school for twelve days, constituting a long-term suspension.

Similarly, the complaint does not assert that the student or his mother sought any further appeal, to the Board or elsewhere, following a meeting with Mr. McDonald and other school officials on 6 October 2003, when the student had been out of school for seven days. Rather, the complaint reflects that Ms. Smith had representation from not one, but two, attorneys during this time period. From the complaint, it appears that even with legal counsel, neither she nor her son took any affirmative steps to appeal the suspension. None of the allegations in the complaint indicates that the student or his mother objected to the outcome of the 6 October meeting, which reduced the disciplinary action from an initial proposed expulsion to a suspension. While Ms. Smith did decide to transfer her son to a different school immediately following the meeting, the complaint does not assert that her decision was based on any alleged violation of procedural due process rights.

Under N.C.G.S. §§ 115C-45(c) and 391(e), the student here always had the statutory right to appeal; thus, the complaint's allegation that he "was never given" that opportunity fails. As we recently observed in *Craig*, "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." 363 N.C. at 339-40, 678 S.E.2d at 355. Here, the complaint contains no allegations suggesting that the student was somehow barred from the doors of either the courthouse or the Board. Nor does the complaint allege that he exhausted his administrative remedies, or even that it would have been futile to attempt to appeal his suspension to the Board. Thus, under our holdings in both *Corum* and *Craig*, an adequate remedy exists at state law to redress the alleged injury, and this direct constitutional claim is barred.

### Section 1983 Claim Against
### Denlinger in her Individual Capacity

[2] To state a claim under 42 U.S.C. § 1983, a plaintiff must show that an individual, acting under color of law, has "subjected [him] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2006). The United States Supreme Court has clarified, however, that procedural due process claims under § 1983 are evaluated differently with respect to the existence of state remedies:

The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete *un-*

*less and until the State fails to provide due process.* Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch,* 494 U.S. 113, 126, 108 L. Ed. 2d 100, 114 (1990) (emphasis added); *id.* at 125, 108 L. Ed. 2d at 114 ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the *deprivation of such an interest without due process of law.*" (emphasis added) (citations omitted)); *see also Parratt v. Taylor,* 451 U.S. 527, 543, 68 L. Ed. 2d 420, 433-34 (1981) (finding no allegation of a violation of procedural due process when the deprivation of property "did not occur as a result of some established state procedure" but was instead due to "the unauthorized failure of agents of the State to follow established state procedure"; moreover, the respondent did not contend that the procedures themselves were inadequate, and the State "provided respondent with the means by which he can receive redress for the deprivation," but respondent did not use those procedures), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 667-68 (1986). *But see Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 73 L. Ed. 2d 172, 188 (1982) (holding that, generally, "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); *Edward Valves, Inc. v. Wake Cty.,* 343 N.C. 426, 434-35, 471 S.E.2d 342, 347 (1996) (quoting *Zinermon* with approval and holding that a plaintiff need not exhaust administrative remedies when seeking redress for a substantive constitutional violation), *cert. denied,* 519 U.S. 1112, 136 L. Ed. 2d 839 (1997).

Here, as noted above, the Douglas claims do not contend that the state remedies provided in N.C.G.S. §§ 115C-45(c) and -391(e) are inadequate or would fail to redress the alleged constitutional injury. Likewise, the complaint does not allege that the student or his mother sought any further appeal to the Board or elsewhere, pursuant to N.C.G.S. §§ 115C-45(c) or -391(e), regarding the meeting at the school on 6 October and the decision to reduce the pending expulsion to a suspension, or the alleged failure to hold a hearing

prior to the suspension. Nor does the complaint contain any allegation that such a request was ignored or denied.

As such, even assuming *arguendo* that the 6 October meeting was constitutionally deficient and deprived the student of his right to procedural due process, the complaint fails to make the additional requisite allegation that the injury was completed when Ms. Denlinger, acting under color of law, refused to provide or somehow denied the student due process following the initial alleged deprivation. *Zinermon*, 494 U.S. at 126, 108 L. Ed. 2d at 114. The sole relevant allegation as to Ms. Denlinger, that she "purposefully postdated her letter . . . to cut off Todd's right to appeal," even when taken as true, is insufficient to establish that he was denied his right to appeal. Simply put, the student can show no claim under § 1983 for violation of procedural due process when his own allegations reveal that he and his mother failed to avail themselves of the due process offered under state law.

Moreover, the complaint reflects that on day seven of the suspension, the student, his mother, and their attorney met with Mr. McDonald, an assistant principal, a school resource officer, and an attorney for the Board. Even assuming that it would have been futile for the student and his mother to seek redress under the state remedies provided by N.C.G.S. §§ 115C-45(c) and -391(e), the allegations in the complaint do not demonstrate how this meeting violated the student's right to procedural due process. Under federal case law, the minimum due process required before a student is suspended for ten days or less is "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581, 42 L. Ed. 2d 725, 739 (1975); *see also id.* at 579, 42 L. Ed. 2d at 737 (stating that, at a minimum, a student's constitutionally protected property interest in a public education may not be taken away without "*some* kind of notice" and "*some* kind of hearing").

However, the Supreme Court also stated, "Longer suspensions or expulsions for the remainder of the school term, or permanently, *may* require more formal procedures." *Id.* at 584, 42 L. Ed. 2d at 740 (emphasis added). Our own Court of Appeals has extended those requirements in the context of long-term suspensions:

> Under the facts of this case, where respondent sought to impose a long-term suspension and the Board Policy specifically

provided for a factual hearing before the Hearing Board, we construe the Due Process Clause of the United States Constitution, applicable to the States through the Fourteenth Amendment, to require that petitioner have the opportunity to have counsel present, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident.

*In re Roberts*, 150 N.C. App. 86, 93, 563 S.E.2d 37, 42 (2002) (citation omitted), *disc. rev. improvidently allowed and appeal dismissed ex mero motu*, 356 N.C. 660, 660, 576 S.E.2d 327, 328 (2003), *cert. denied*, 540 U.S. 820, 157 L. Ed. 2d 38 (2003), *overruled on other grounds by N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 661-64, 599 S.E.2d 888, 895-97 (2004).

According to the complaint, at the end of the 6 October meeting at the school, Mr. McDonald "said Todd had not been suspended for the remainder of the school year, but for only ten days, and that he could return to school on October 14, 2003," which would have meant he was out of school for a total of twelve days. Aside from the presence of Ms. Smith and her attorney, the complaint alleges no additional facts about what took place during the meeting, such as whether the student was allowed to present his version of events or to question or call his own witnesses, or how the discussion developed. The complaint does not allege that Ms. Denlinger, Mr. McDonald, or any other Board or school official prevented or denied the student the right to engage in those actions at the hearing. Likewise, there are no allegations of any objections to the meeting's outcome, that is, the reduction of the suspension, beyond Ms. Smith's decision to transfer her son to another school. Even when taken as true, the allegations of the complaint pertaining to this Douglas claim are insufficient as a matter of law to state a claim for relief for a violation of the student's federal due process rights.

## Conclusion

For the foregoing reasons, we conclude that plaintiff Todd Douglas, deceased, by and through his mother, Sheryl Smith, the administratrix of his estate, failed to state a claim for the violation of his procedural due process rights under either our State constitution or 42 U.S.C. § 1983. Accordingly, we reverse the Court of Appeals and affirm the trial court's dismissal of the Douglas claims under Rules 12(b)(1) and 12(b)(6). As to plaintiffs' claim for declaratory relief regarding the Board's gang policy, we conclude that discretionary

review was improvidently allowed and leave undisturbed the Court of Appeals' unanimous decision to reverse and remand for additional proceedings as to that issue.

REVERSED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.