GOOD HOPE HOSPITAL, INC., GOOD HOPE HEALTH SYSTEM, LLC, AND TRIAD HOSPITALS, INC., PLAINTIFFS, AND TOWN OF LILLINGTON, PLAINTIFF-INTERVENOR v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, AND ROBERT J. FITZGERALD, LEE B. HOFFMAN, PHYLLIS THORNE DAW, WILLIAM WARREN IN THEIR OFFICIAL CAPACITIES, AND BETSY JOHNSON REGIONAL HOSPITAL, INC. AND AMISUB OF NORTH CAROLINA, INC. D/B/A CENTRAL CAROLINA HOSPITAL, DEFENDANTS

No. COA04-1008

(Filed 1 November 2005)

**1. Hospitals and Other Medical Facilities— certificate of need—appeal of denial—exhaustion of administrative remedies**

Plaintiffs' failure to exhaust administrative remedies meant that the trial court lacked subject matter jurisdiction over claims arising from the denial of a certificate of need to replace and expand a hospital. The court properly dismissed plaintiffs' constitutional claims and request for a declaratory judgment.

**2. Hospitals and Other Medical Facilities— denial of certificate of need—dismissal of injunctive claim—failure to exhaust administrative remedies**

Failure to exhaust adequate administrative remedies properly resulted in the dismissal of a claim for injunctive relief arising from the denial of a certificate of need to replace and expand a hospital.

**3. Civil Rights— § 1983—exhaustion of administrative remedies**

Procedural due process claims may not be brought under 42 U.S.C. § 1983 until administrative remedies have been exhausted. Although violation of a *substantive* right may be the subject of a § 1983 claim regardless of the exhaustion of remedies, plaintiffs here did not sufficiently state such a claim.

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

**4. Constitutional Law— petitioning for redress—lobbying— immunity**

The Noerr doctrine applies in North Carolina to bar any claim that has its gravamen in constitutionally protected petitioning activity. The trial court here did not err by dismissing claims by one hospital against another arising from the denial of a certificate of need; the exceptions for false information depriving the proceeding of legitimacy and sham or objectively baseless lobbying activities did not apply.

Appeal by plaintiffs and plaintiff-intervenor from judgment entered 6 April 2004 by Judge Robert F. Floyd, Jr. in Harnett County Superior Court. Heard in the Court of Appeals 23 March 2005.

*Smith Moore LLP, by Maureen Demarest Murray, Susan M. Fradenburg, and William W. Stewart, Jr., for plaintiffs-appellants.*

*Morgan, Reeves and Gilchrist, by C. Winston Gilchrist, for plaintiff-intervenor-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe and Special Deputy Attorney General R. Marcus Lodge, for State defendants-appellees.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Kathleen A. Naggs, and Nelson Mullins Riley & Scarborough, L.L.P., by Noah H. Huffstetler, III, Denise M. Gunter and Lisa R. Gordon, for defendant-appellee Betsy Johnson Regional Hospital, Inc.*

*Bode, Call & Stroupe, L.L.P., by S. Todd Hemphill and Robert V. Bode, for defendant-appellee Amisub of North Carolina, Inc., d/b/a/ Central Carolina Hospital.*

STEELMAN, Judge.

Plaintiffs appeal the dismissal of their claims by the trial court. Because the trial court dismissed the claims under Rule 12(b) of the Rules of Civil Procedure, our recitation of the relevant factual background is based upon the allegations contained in plaintiffs' complaint.

Plaintiff Good Hope Hospital (Good Hope) is currently located in Erwin, Harnett County. Its facility was originally constructed in 1921,

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

and is licensed for a total of 72 beds, consisting of 43 acute care beds and 29 psychiatric beds. The current facility contains two operating rooms. On 15 April 2001, Good Hope filed an application for a certificate of need (CON) with the North Carolina Department of Health and Human Services (Department) proposing to develop a partial replacement facility, located about three miles from the existing facility. The application proposed to develop 34 acute care beds, 12 psychiatric beds, and 3 operating rooms at the new facility, and to continue the use of the existing facility for outpatient therapy, medical records, plant operations and maintenance, training, and storage. A CON was issued to Good Hope by Department on 14 December 2001 for this proposed project.

Good Hope proposed to finance the new facility through a loan approved by the United States Department of Housing and Urban Development (HUD). This proposal was submitted to the Medical Care Commission for approval. Betsy Johnson Regional Hospital, Inc. (Betsy Johnson) operates a hospital located in Dunn, Harnett County. There were unsuccessful merger talks between Good Hope and Betsy Johnson. Betsy Johnson commented against Good Hope's financing proposal before the Medical Care Commission. The Medical Care Commission denied approval of Good Hope's financing proposal and directed it to seek private financing. It subsequently approved a $26,000,000.00, 68 bed expansion of Betsy Johnson, with HUD financing.

Good Hope subsequently entered into an agreement with Triad Hospitals, Inc. to form a joint venture, Good Hope Health System, LLC. (these three entities are hereinafter referred to collectively as "plaintiffs"). The purpose of the joint venture was to erect and operate a hospital in Harnett County. Triad was not willing to proceed with construction of the new facility based upon the 14 December 2001 CON, but wanted to construct a larger facility at a different location. On 13 April 2003 plaintiffs filed a new CON application with Department to develop a larger replacement hospital to be located in Lillington. The application proposed 34 acute care beds, 12 psychiatric beds and 3 operating rooms. Department denied this application on 26 September 2003. Plaintiffs appealed this denial to the Office of Administrative Hearings, to the Superior Court of Wake County, and to this Court. Betsy Johnson and Amisub were allowed to intervene in this appeal, opposing the issuance of the CON.

On 22 August 2003, plaintiffs notified Department of their intent to develop a replacement hospital facility under the provisions of

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

N.C. Gen. Stat. § 131E-184(a). This statute exempts projects from CON review under certain specific circumstances. The stated basis of this notice was that the condition of Good Hope had deteriorated and that there existed imminent safety hazards as defined by federal and state codes. By letters dated 11 December 2003 and 15 January 2004, Department advised plaintiffs that their proposed project was not exempt from CON review under the provisions of N.C. Gen. Stat. § 131E-184(a). This decision was based upon the correction of "the deficiencies that constituted 'an immediate and serious threat' to the health and safety of patients." We take judicial notice that plaintiffs appealed this decision to the Office of Administrative Hearings, to the Superior Court of Wake County, and to this Court.

On 29 January 2004, plaintiffs filed this action in the Superior Court of Harnett County. Their complaint alleged the following claims: (1) for declaratory judgment that plaintiffs are entitled to construct a new hospital in Harnett County under the exemption provisions of N.C. Gen. Stat. § 131E-184, without any restrictions as to "size or capital expenditure."; (2) for a mandatory injunction compelling Department to exempt a 72 bed, 3 operating room facility from the CON requirements; (3) that the denial of plaintiffs' exemption requests violated their rights of equal protection, due process and § 42 U.S.C. 1983; (4) that Betsy Johnson's opposition to plaintiffs' proposed projects constituted tortious interference with contract, tortious interference with prospective economic advantage, a conspiracy in restraint of trade in violation of N.C. Gen. Stat. § 75-1, and unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1, and common law unfair competition, (5) an injunction prohibiting Betsy Johnson from further interfering with or opposing plaintiffs' proposed projects. Plaintiffs joined Amisub as a defendant, alleging that under N.C. Gen. Stat. § 1-260 it may have an interest that may be affected by the litigation, but made no further allegations as to Amisub. Defendant, Betsy Johnson, filed a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) on 10 February 2004. Defendant Department filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), to dismiss for failure to state a claim under Rule 12(b)(6) and to strike plaintiffs' request for a jury trial under Rule 12(f) on 13 February 2004. Plaintiffs filed a motion for partial summary judgment as to certain of their claims for declaratory relief on 17 February 2004. Defendant, Betsy Johnson filed a supplemental motion to dismiss on 26 February 2004, asserting as an additional basis of its motion to dismiss lack of subject matter jurisdiction under Rule 12(b)(1). On 20

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

February 2004, the Town of Lillington (Intervenor) moved to intervene as a party plaintiff in the case. This motion was granted on 1 March 2004.

On 1 March 2004, these motions came on for hearing before Judge Floyd. On 1 April 2004, Judge Floyd entered two orders encompassing the following rulings: (1) Betsy Johnson's motion to dismiss was granted; (2) plaintiffs' claims for declaratory judgment and injunctive relief against Betsy Johnson were denied; (3) Department's motion to dismiss was granted, except as to the claim under the Public Records Act; (4) Department's motion to strike plaintiffs' request for a jury trial was denied; (5) plaintiffs' motions for preliminary and permanent injunctions were denied. On 3 May 2004, plaintiffs dismissed their claims under the Public Records Act, with prejudice. Plaintiffs and Intervenor appeal the two orders entered on 1 April 2004.

**[1]** In their first argument, plaintiffs contend that the trial court erred in dismissing the claims against Department. We disagree.

The trial court dismissed plaintiffs' claims against Department pursuant to Rule 12(b)(1) based upon a lack of subject matter jurisdiction. "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999). Before any hospital may service the public, it must first obtain a licence from the Department of Health and Human Services. N.C. Gen. Stat. § 131E-77. Pursuant to N.C. Gen. Stat. § 131E-78(a), the Department of Health and Human Services has the sole "authority to deny, suspend, revoke, annul, withdraw, recall, cancel, or amend a license in any case when it finds a substantial failure to comply with the provisions of this Part or any rule promulgated under this Part." Any applicant who has been denied a license has a right to a hearing pursuant to Chapter 150B to review that decision. N.C. Gen. Stat. § 131E-78(b)(1). "Any applicant or operator who is dissatisfied with the decision of the Department as a result of the hearing provided in this section and after a written copy of the decision is served, may request a judicial review under Chapter 150B of the General Statutes, the Administrative Procedure Act." N.C. Gen. Stat. § 131E-78(c).

In the instant case, plaintiffs requested a hearing pursuant to N.C. Gen. Stat. § 131E-78(b)(1), but also filed the instant claim seeking relief in the courts of general jurisdiction before exhausting their administrative remedies. "[T]he proper course for the plaintiffs was

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

to exhaust their remedies under the [Administrative Procedure Act] before seeking judicial review." *North Buncombe Ass'n of Concerned Citizens v. Rhodes,* 100 N.C. App. 24, 28, 394 S.E.2d 462, 465 (1990). Plaintiffs claim that they were not required to exhaust this administrative remedy because the administrative remedies are inadequate, and the administrative agencies do not have jurisdiction to hear their constitutional and § 1983 claims, nor grant declaratory or injunctive relief.

"When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts. On the other hand, if the remedy established by the NCAPA is inadequate, exhaustion is not required. The burden of showing inadequacy is on the party claiming inadequacy, who must include such allegations in the complaint." *Jackson v. North Carolina Dep't of Human Resources Div. of Mental Health, Developmental Disabilities, & Substance Abuse Servs.,* 131 N.C. App. 179, 186, 505 S.E.2d 899, 903-04 (1998).

In *Rhodes, supra,* plaintiffs filed a claim in Buncombe County Superior Court seeking to have a mining permit issued to Vulcan Materials Company, Inc. to operate a crushed stone quarry declared void, and further seeking injunctive relief. Plaintiffs' complaint sought, *inter alia,* a declaratory judgment requesting the trial court to determine that the Mining Act (N.C. Gen. Stat. §§ 74-46 to -68) was unconstitutional as applied to them, and that the permit had been improperly granted.

The *Rhodes* Court held that the trial court lacked jurisdiction to consider plaintiffs' claims under the Declaratory Judgment Act, including their constitutional claim, because they had failed to exhaust their administrative remedies under the Administrative Procedure Act. *Rhodes,* 100 N.C. App. 24, 394 S.E.2d 462. For the same reason, we hold that the trial court properly dismissed plaintiffs' constitutional claims, and its request for declaratory judgment. *See also, Murphy v. McIntyre,* 69 N.C. App. 323, 328, 317 S.E.2d 397, 400 (1984).

[2] Plaintiffs further argue that the trial court erred in dismissing their claim for injunctive relief, because the Department of Health and Human Services has no authority to grant equitable relief. "A pleading that alleges inadequacy of administrative remedy states a claim upon which equitable relief may be granted if the circumstances warrant it." *Lloyd v. Babb,* 296 N.C. 416, 426-27, 251 S.E.2d

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

843, 851 (1979). "The complaint must be carefully scrutinized ' "to ensure that the claim for relief [is] not inserted for the sole purpose of avoiding the exhaustion rule." ' Thus, we must consider whether the available administrative remedies were indeed inadequate to resolve [plaintiff's] claims." *Jackson,* 131 N.C. App. at 187, 505 S.E.2d 899, 904 (citations omitted). We have thoroughly reviewed plaintiffs' claim seeking injunctive relief, and hold that the available administrative remedies are not inadequate to resolve their claim, and hold that it was properly dismissed.

[3] State courts have concurrent jurisdiction with federal courts over 42 U.S.C. § 1983 claims, and may hear certain constitutional claims even if administrative remedies have not been exhausted. *Edward Valves, Inc. v. Wake County,* 343 N.C. 426, 434, 471 S.E.2d 342, 347 (1996). Where a plaintiff argues that administrative remedies are inadequate, and thus violate procedural due process:

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch,* 494 U.S. 113, 126, 108 L. Ed. 2d 100, 114 (1990); see also *Edward Valves, Inc. v. Wake County,* 343 N.C. 426, 434, 471 S.E.2d 342, 347 (1996). Thus, procedural due process claims may not be brought under § 1983 until administrative remedies have been exhausted. *Id.*

Violation of a substantive constitutional right may be the subject of a § 1983 claim, regardless of whether administrative remedies have been exhausted, because the violation is complete when the prohibited action is taken. *Id.* However:

> The text of section 1983 permits actions only against a "person." In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 105 L. Ed. 2d 45 (1989), the Supreme Court held that when an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacity are

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

"persons" under section 1983 when the remedy sought is monetary damages.

*Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282-83 (1992). In support of their § 1983 claim, plaintiffs allege:

> Agency defendants through their actions have caused plaintiffs to lose the $200,000 grant from the Kate B. Reynolds Foundation for the replacement facility, deprived plaintiffs of the right to do business, due process of law, equal protection and have imposed excessive fines against Good Hope Hospital through the forced expense in excess of $225,000 to make unwarranted repairs in, rather than replacement of, an inadequate, deficient and aged hospital facility, thereby depriving Good Hope Hospital of the use of such funds to develop a replacement hospital facility and have caused Good Hope to incur significant expenses including attorneys fees in violation of 42 U.S.C. § 1983.

To the extent that plaintiffs are seeking monetary damages, the state defendants are not "persons" in the § 1983 context. To the extent, if at all, that plaintiffs are seeking injunctive relief for violations of their procedural due process rights, their claim was properly dismissed for lack of jurisdiction for failure to exhaust their administrative remedies. Plaintiffs' sole claim for relief pursuant to § 1983, then, would be for any claim for injunctive relief arguing that their equal protection rights have been violated. We are not convinced plaintiffs have stated any such claim for injunctive relief. Assuming *arguendo* such a claim exists, we hold that it was properly dismissed.

> In support of their equal protection claim, plaintiffs state:

> Agency defendants have deprived Good Hope Hospital of the right to equal protection under Article I, Section 19 of the North Carolina and the Fourteenth Amendment to the United States Constitution by their unauthorized and improper application of the CON Act [and other statutes and regulations] and by unfairly and improperly favoring Betsy Johnson in its expansion and partial hospital replacement projects and unfairly discriminating against Good Hope and its proposed replacement hospital facility.

Plaintiffs further make a general allegation of discrimination against them by the state defendants based on their "for profit status and the bias of the individual Agency defendants against for profit health care providers." We note that the North Carolina Constitution is inapposite in a § 1983 claim.

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

Though it appears the trial court dismissed this claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), defendants also moved for dismissal pursuant to Rule 12(b)(6), and we elect to review this argument based on Rule 12(b)(6). *Snuggs*, 310 N.C. at 740, 314 S.E.2d at 529.

> The question before a court considering a motion to dismiss for failure to state a claim is whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory. A complaint may be dismissed pursuant to Rule 12(b)(6) where "(1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim." "In reviewing a dismissal of a complaint for failure to state a claim, the appellate court must determine whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events which produced the claim to enable the adverse party to prepare for trial."

*Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002). "We are not required, however, 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir., 2002).

> The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," but "keeps governmental decision-makers from treating differently persons who are in all relevant respects alike." To succeed on an equal protection claim, [plaintiff] "must first demonstrate that [it] has been treated differently from others with whom [it] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." If [it] makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." To state an equal protection claim, [plaintiff] must plead sufficient facts to satisfy each requirement. . . .

*Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002). Plaintiffs do not contend that they are entitled to any heightened scrutiny in the

instant case, and after thoroughly reviewing their complaint we find no reason for any. Their claim is therefore subject to rational basis review, and their complaint must therefore allege that Department's discriminatory acts against them were without any rational basis. *Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063 (2000); *Willis v. Town of Marshall*, 2003 U.S. Dist. LEXIS 16967, 40-43 (W.D.N.C. 2003). Plaintiffs' complaint fails to allege lack of rational basis, therefore fails to state a claim upon which relief may be granted, and was properly dismissed. *See Id.* This argument is without merit.

**[4]** In their second argument, plaintiffs contend the trial court erred in dismissing the claims against Betsy Johnson. We disagree.

" 'A complaint should be dismissed for failure to state a claim where it is apparent that plaintiff . . . is entitled to no relief under any statement of facts which could be proven, more specifically, when there is an absence of law to support the claim asserted, a want of facts sufficient to establish a good claim, or some defense which will necessarily defeat the claim.' " *Brawley v. Brawley*, 87 N.C. App. 545, 552, 361 S.E.2d 759, 763 (1987). At the hearing on its motion to dismiss, Betsy Johnson argued that the *Noerr-Pennington* doctrine (*Noerr*) shielded it from any liability for plaintiffs' claims against it.

> In *Noerr* and *Pennington*, the Supreme Court held that attempts to influence the legislative process, even if prompted by an anticompetitive intent, are immune from antitrust liability. This doctrine rests on two grounds: the First Amendment's protection of the right to petition the government, and the recognition that a representative democracy, such as ours, depends upon the ability of the people to make known their views and wishes to the government.

*Potters Medical Center v. City Hospital Asso.*, 800 F.2d 568, 578 (6th Cir., 1986). A search of the decisions of the appellate courts of this state turns up no instances where *Noerr* has been applied (*Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 555 S.E.2d 281 (2001), discusses *Noerr*, but declines to apply it, determining that *Noerr* is not implicated under the facts of that case). However the Fourth Circuit has applied *Noerr* in cases out of North Carolina. *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 791 F.2d 288, 292 (4th Cir., 1986); *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50 (4th Cir., 1981). We hold that *Noerr* applies in the state courts of North Carolina. *See also Gen-Probe, Inc. v. Amoco Corp.*,

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

926 F. Supp. 948, 956 (D. Cal., 1996) ("*Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity."); *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir., 1998) ("Thus, the *Noerr-Pennington* doctrine sweeps broadly and is implicated by both state and federal antitrust claims that allege anticompetitive activity in the form of lobbying or advocacy before any branch of either federal or state government.").

*Noerr* has been recognized in federal courts in the context of certificate of need cases. *Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.*, 185 F.3d 154, 158 (3d Cir., 1999); *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056 (9th Cir., 1998); *Tarabishi v. McAlester Regional Hosp.*, 951 F.2d 1558 (10th Cir. 1991); *Potters Medical Center v. City Hospital Asso.*, 800 F.2d 568, 578 (6th Cir., 1986); *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 791 F.2d 288, 292 (4th Cir., 1986); *St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d 948, 955 (11th Cir. 1986).

Plaintiffs argue that they alleged facts in their complaint sufficient to establish two exceptions to *Noerr*, and thus survive Betsy Johnson's motion to dismiss. Plaintiffs argue that there exist both a "false information" and a "sham" exception to *Noerr* immunity protection. In *Kottle*, 146 F.3d 1056, the 9th Circuit applied *Noerr* in a certificate of need case and affirmed the district court's dismissal for failure to state a claim of plaintiff's suit based on *Noerr* immunity, even though plaintiff had alleged the "sham" exception, and further alleged that defendant had made numerous misrepresentations concerning plaintiff's CON petition. The 9th Circuit, after reviewing the relevant law, held that in the certificate of need context, a plaintiff

> can get around the *Noerr-Pennington* doctrine only if his allegations show one of three things: (1) [defendant's] advocacy before the Department was objectively baseless and merely an attempt to stifle competition; (2) [defendant] engaged in a pattern of petitions before the Department without regard to the merit of the petitions; or (3) [defendant's] misrepresentations before the Department deprived the entire CON proceeding of its legitimacy.

*Kottle*, 146 F.3d 1056, 1062-63. We find the 9th Circuit's reasoning compelling.

In the instant case plaintiffs have not alleged a "pattern of petitions before the Department without regard to the merit of the

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

petitions," so they fail the second prong of the test. In order for plaintiffs to succeed under the first prong of the test, they must allege "that a defendant's lobbying activities were 'objectively baseless' for the 'sham' exception to apply. Lobbying activity is objectively baseless if a reasonable private citizen could not expect to secure favorable government action. The lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 862 (5th Cir., 2000). "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 61 (U.S., 1993). In the instant case, plaintiffs' application for a CON for a replacement facility was rejected by the Agency. Plaintiffs appealed to the Office of Administrative Hearings, and lost that appeal. Because defendant Betsy Johnson was successful in its petition to prevent the issuance of a CON for plaintiffs' proposed replacement facility, that petition can not be held to be objectively baseless. *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir., 1998).

In order for plaintiffs to prevail under the third prong of the test, they must allege facts indicating that defendant Betsy Johnson made misrepresentations before Department that deprived the entire CON proceeding of its legitimacy. "[W]hen 'a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.' " *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir., 1998) (citation omitted). "In such cases, we employ a heightened pleading standard, and that standard 'would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as "misrepresentations" by the other party.' " *Id.* (citations omitted).

In the instant case plaintiffs make vague allegations of misrepresentations on the part of defendant Betsy Johnson. A representative example of the allegations in plaintiffs' complaint follows: "[Defendant] had made comparable misrepresentations to the Attorney General, including but not limited to Triad Hospitals' past provision of charity care at a hospital in New Mexico, and Good Hope Health System's commitment to provide charity care at the Good Hope Hospital replacement facility and has otherwise sought to malign the intentions of Good Hope Health System, Good Hope Hospital and Triad Hospitals." Nowhere in its complaint do plaintiffs

make allegations of any specific misrepresentations defendant Betsy Johnson made that could deprive the entire CON proceeding of legitimacy. We hold that plaintiffs' complaint fails to meet the heightened standard required to overcome defendant Betsy Johnson's *Noerr* immunity. Because defendant Betsy Johnson was protected by *Noerr* immunity, the trial court properly dismissed the claims against defendant Betsy Johnson. This argument is without merit.

AFFIRMED.

Judge McGEE concurs.

Judge TIMMONS-GOODSON concurs prior to 31 October 2005.