Sykes v. Health Network Sols., Inc., 2018 NCBC 28.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 2595

SUSAN SYKES d/b/a ADVANCED
CHIROPRACTIC AND HEALTH
CENTER; DAWN PATRICK; TROY
LYNN; LIFEWORKS ON LAKE
NORMAN, PLLC; BRENT BOST; and
BOST CHIROPRACTIC CLINIC, P.A.,

Plaintiffs,

v.

HEALTH NETWORK SOLUTIONS,
INC. f/k/a CHIROPRACTIC
NETWORK OF THE CAROLINAS,
INC.; MICHAEL BINDER; STEVEN
BINDER; ROBERT STROUD, JR.;
LARRY GROSMAN; MATTHEW
SCHMID; RALPH RANSONE;
JEFFREY K. BALDWIN; IRA RUBIN;
RICHARD ARMSTRONG; BRAD
BATCHELOR; JOHN SMITH; RICK
JACKSON; and MARK HOOPER,

Defendants.

ORDER & OPINION ON
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT

1.     THIS MATTER is before the Court on Defendants Health Network Solutions, Inc. ("HNS"), Michael Binder, Steven Binder, Robert Stroud, Jr., Larry Grossman, Matthew Schmid, Ralph Ransone, Jeffrey K. Baldwin, Ira Rubin, Richard Armstrong, Brad Batchelor, John Smith, Rick Jackson, and Mark Hopper's ("Individual Defendants" and collectively with HNS, "Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion").  For the reasons discussed below, the Court GRANTS the Motion.

*Oak City Law LLP, by Robert E. Fields III and Samuel Piñero II, Craige Jenkins Liipfert & Walker LLP, by Ellis B. Drew III and Leon E. Porter, and Doughton Blancato PLLC, by William A. Blancato, for Plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Jennifer K. Van Zant, W. Michael Dowling, and Benjamin R. Norman, for Defendants.*

Gale, Chief Judge.

## I.  INTRODUCTION

2.     This putative class action is one of two related cases by four North Carolina-licensed chiropractors ("Plaintiffs") who assert that HNS's business practices violate North Carolina's antitrust and insurance laws.  The Court earlier narrowed Plaintiffs' claims by rejecting certain of the claims based on insurance laws and restricting potential antitrust claims to only those based on a relevant market defined as the market for chiropractic services in North Carolina ("North Carolina Market").  The Motion seeks to dismiss all claims because of Plaintiffs' failure to allege market power within that market.

3.     Plaintiffs' essential contention is that HNS, and insurers with which it conspires, unlawfully restricts the output of chiropractic services.  In this action ("*Sykes I*"), Plaintiffs bring suit against HNS and its owners.  In the later-filed case, *Sykes v. Blue Cross Blue Shield of North Carolina*, No. 15 CVS 3136, ("*Sykes II*"), Plaintiffs assert substantially similar claims against Blue Cross Blue Shield of North Carolina ("Blue Cross"), Cigna Healthcare of North Carolina, Inc. ("Cigna"), and MedCost, LLC[1] ("MedCost" and collectively with Blue Cross and Cigna, "Insurers").

---

[1] Plaintiffs also originally sued another third-party administrator, Healthgram, Inc., but have since dismissed their claims against it.

4.     The Court today issues a separate Order & Opinion in *Sykes II* and dismisses all claims in both cases because Plaintiffs have failed to allege market power in the North Carolina Market.

## II.     PROCEDURAL BACKGROUND

5.     The procedural background of this action is more fully summarized in the Court's August 18, 2017 Order & Opinion. *Sykes I*, No. 13 CVS 2595, 2017 NCBC LEXIS 73, at \*3–6 (N.C. Super. Ct. Aug. 18, 2017).

6.     Plaintiffs brought this action on April 30, 2013, after which the case was designated as a complex business case and assigned to the undersigned.

7.     Plaintiffs filed their first amended complaint on July 28, 2013, and Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure.   The Court denied that motion and stayed additional proceedings pending discovery regarding market definition.  *See Sykes I*, 2013 NCBC LEXIS 52, at \*3, \*13–17 (N.C. Super. Ct. Dec. 5, 2013).

8.     During the market discovery period, Plaintiffs brought *Sykes II* against Insurers and, on July 16, 2015, filed their Second Amended Class Action Complaint ("Second Amended Complaint") in this action.   In the Second Amended Complaint, Plaintiffs allege that Defendants' conduct harmed four possible relevant markets, the fourth of which is the North Carolina Market.

9.     On August 28, 2015, Defendants filed a motion for partial summary judgment, contending that the first three markets Plaintiffs alleged were

impermissibly narrow and legally non-cognizable, and that Defendants did not participate in the North Carolina Market.

10. On September 25, 2015, Defendants filed the Motion, which attacks the sufficiency of all of the claims in the Second Amended Complaint.

11. On August 18, 2017, the Court issued its Order & Opinion on Defendants' motion for partial summary judgment and the Motion. The Court dismissed Plaintiffs' declaratory judgment claims to the extent that they are based on chapter 58 violations, their North Carolina General Statute section 75-1.1 claim, their breach of fiduciary duty claim, and their conspiracy claim to the extent it depended on anything other than claims based on violations of North Carolina General Statutes sections 75-1, 75-2, and 75-2.1 ("Antitrust Claims"), which the Court did not dismiss. *Sykes I*, 2017 NCBC LEXIS 73, at *71–72. The Court granted in part and denied in part Defendants' motion for partial summary judgment, and dismissed the Antitrust Claims to the extent that they were based on three of the four markets Plaintiffs proposed because those markets are not legally cognizable. *Id.* at *71. The Court accepted the North Carolina Market as legally cognizable. However, it deferred ruling on whether Plaintiffs' Antitrust Claims could continue because it could not reasonably assess the adequacy of Plaintiffs' allegations of Defendants' market power within the North Carolina Market until receiving supplemental briefs on that issue. *Id.* at *64.

12. On October 2, 2017, the parties filed supplemental briefs, and, on October 23, 2017, the parties filed response briefs.

13. Pursuant to Rule 7.4 of the General Rules of Practice and Procedure for the North Carolina Business Court, the Court elects to rule on the Motion without additional oral argument. The Motion is ripe for resolution.

## III. FACTUAL BACKGROUND

14. The Court refers to its earlier extensive summary of factual background, *Sykes I*, 2017 NCBC LEXIS 73, at *6–13, and here includes only factual information pertinent to the Motion. The Court accepts Plaintiffs' factual allegations as true and makes any permissible inferences favorable to them, but is not bound by legal conclusions unsupported by underlying factual allegations.

### A. The Parties

15. The named Plaintiffs—Susan Sykes, Dawn Patrick, Troy Lynn, and Brent Bost—are four licensed North Carolina chiropractors and their affiliated practices. (Second Amended Class Action Compl. ("Second Am. Compl.") ¶¶ 3–6, ECF No. 78.) Plaintiffs seek to represent a class consisting of "all licensed chiropractors practicing in North Carolina from 2005 to the present who provided services in the North Carolina Market." (Second Am. Compl. ¶ 47.)

16. HNS is an "integrated independent practice association" ("IPA"), consisting of approximately 1,000 of North Carolina's approximately 2,000 active chiropractors. (Second Am. Compl. ¶¶ 28–29, 57.)

17. Individual Defendants Michael Binder, Steven Binder, Robert Stroud, Larry Grossman, Matthew Schmid, Ralph Ransone, Jeffery Baldwin, Ira Rubin, Richard Armstrong, Brad Batchelor, John Smith, Rick Jackson, Mark Hopper are

chiropractors who currently or previously practiced chiropractic in North Carolina and who own, or previously owned, an interest in HNS. (Second Am. Compl. ¶¶ 8–20, 26.)

**B.  HNS's Business Structure**

18.  Only HNS members can provide in-network chiropractic services for Insurers who contract with HNS. (Second Am. Compl. ¶ 32.) Chiropractors enroll in HNS by agreeing to provide in-network care to patients covered by Insurers, with whom HNS has entered into exclusive agreements to provide in-network care. (Second Am. Compl. ¶ 29.) All chiropractors who join HNS must pay fees to HNS. (Second Am. Compl. ¶ 32.)

19.  HNS uses a utilization management ("UM") program, whereby HNS and Insurers review and manage chiropractors based on their cost per patient. (Second Am. Compl. ¶ 38.) If a chiropractor's average cost per patient exceeds a mean calculated by HNS by more than 50%, the chiropractor is put on probation and is subject to potential termination. (Second Am. Compl. ¶ 38.)

20.  Plaintiffs allege that each class member was either excluded from in-network access to the Insurers' patients, charged fees and subjected to HNS's utilization review process, or both. (Second Am. Compl. ¶ 48.) Plaintiffs allege that HNS is "like a union which negotiates employment terms for its members," except that HNS puts Insurers' interests ahead of Plaintiffs' by exclusively contracting with Insurers to exact fees from chiropractors seeking access to patients covered by Insurers. (Second Am. Compl. ¶¶ 29–31.) Essentially, Plaintiffs allege that HNS's

exclusive contracts with Insurers enable a "scheme that reduces the number of medically necessary and appropriate treatments" provided by chiropractors in HNS's network and restrict output by allowing Insurers to avoid paying for medically necessary and appropriate care. (Second Am. Compl. ¶ 37.) Plaintiffs assert that the UM program reduces Insurers' chiropractic purchases by "millions of dollars per year," (Second Am. Compl. ¶ 42), thereby giving Insurers a "windfall." (Pls.' Br. Opp. Defs.' Mot. Dismiss Second Am. Compl. 2, ECF No. 96.)

21.    Plaintiffs initially alleged four markets, the narrowest of which was restricted to insured in-network chiropractic services. The Court has restricted the Antitrust Claims to those measured within the North Carolina Market.

## IV.    LEGAL STANDARD

22.    On a motion to dismiss under Rule 12(b)(6), the Court considers "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008) (quoting *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005)), and may ignore the plaintiff's legal conclusions. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

23. The Court will grant a motion to dismiss under Rule 12(b)(6) when any of three things is true: (1) no law supports the plaintiff's claim, (2) the complaint does not plead sufficient facts to state a legally sound claim, or (3) the complaint discloses a fact that defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

24. The Motion must be decided under state law, but the Court may consider federal case law as persuasive authority for the Antitrust Claims. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 656–57, 194 S.E.2d 521, 530–31 (1973); *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, No. 16 CVS 16404, 2017 NCBC LEXIS 33, at *44 (N.C. Super. Ct April 11, 2017); *Window World of Baton Rouge, LLC, v. Window World, Inc.*, Nos. 15 CVS 1–2, 2016 NCBC LEXIS 82, at *14–15 (N.C. Super. Ct. Oct. 25, 2016). However, when considering federal case law, the Court does not apply the "plausibility" standard adopted by the federal courts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

## V. ANALYSIS

### A. Plaintiffs do not Satisfy Rule 12(b)(6) Simply by Adhering to Rule 8.

25. In their abbreviated supplemental briefs, Plaintiffs argue that they have complied with Rule 8's requirement to provide fair notice of their claims, and that surviving the Motion under Rule 12(b)(6) does not require more. (Pls.' Suppl. Br. Concerning Market Power 1–2, ECF No. 105; Pls.' Response Br. Concerning Market Power 1–2, ECF No. 108.) Making no attempt to segregate their factual allegations among the four markets they allege, Plaintiffs argue only that thirty-four or more

paragraphs in the Second Amended Complaint "have allegations about market power, abuse of that power, how [Defendants] have used their power to restrict output and fix prices and how competition has been restricted." (Pls.' Suppl. Br. Concerning Market Power 2.)

26. "The general standard for civil pleadings in North Carolina is notice pleading." *Murdock v. Chatham Cty.*, 198 N.C. App. 309, 316, 679 S.E.2d 850, 855 (2009) (citing N.C. Gen. Stat. § 1A-1, Rule 8(a)(1)). "Under this 'notice pleading' standard, 'a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought.'" *Tillery Envtl. LLC v. A&D Holdings, Inc.*, No. 17 CVS 6525, 2018 NCBC LEXIS 13, at *78 (N.C. Super. Ct. Feb. 9, 2018) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)).

27. However, even if a pleading provides proper notice of "the nature and basis" of a claim sufficient to formulate an answer, the Court must still, under a Rule 12(b)(6) motion, "address the legal sufficiency" of each pleaded claim. *Kingsdown, Inc. v. Hinshaw*, No. 14 CVS 1701, 2015 NCBC LEXIS 30, at *14, *15 (N.C. Super. Ct. Mar. 25, 2015). A pleading that satisfies Rule 8's notice requirement may still be subject to Rule 12(b)(6) dismissal. *Id.* at *13–45 (holding that a counterclaim-plaintiff's claims did not violate Rule 8 and then dismissing with prejudice many of those claims under Rule 12(b)(6)).

28.     The Court previously held that Plaintiffs satisfied Rule 8 in regard to claims against the Individual Defendants. *Sykes I*, 2017 NCBC LEXIS 73, at *65 (noting that Plaintiffs' allegations regarding the Individual Defendants were "within the outer bounds of acceptable notice pleading"). The Court similarly concludes that Plaintiffs have satisfied Rule 8 in regard to their definition of the North Carolina Market, (Second Am. Compl. ¶ 33), and their generalized contention that HNS abused its market power in that market. (*See, e.g.*, Second Am. Compl. ¶¶ 37–39, 46, 66–68). This holding, however, does not resolve the Rule 12(b)(6) Motion.

**B.     The Antitrust Claims**

**(1)     The Court assumes, for purposes of the Motion only, that HNS participates in the North Carolina Market.**

29.      Defendants initially argue that the Antitrust Claims against them must fail because they do not participate in the North Carolina Market. (Defs.' Br. Supp. Mot. Dismiss Second Am. Compl. 11, ECF No. 86.) Plaintiffs characterize this argument as "silly" and assert that HNS's contracts with insurers, contracts with chiropractors, and monitoring of chiropractors' services "without question" constitute HNS's participation in the North Carolina Market. (Pls.' Br. Opp. Defs.' Mot. Dismiss Second Am. Compl. 11.)

30.     The Court earlier concluded "that there are disputed issues of fact as to whether Defendants participate in [the North Carolina M]arket," and that summary judgment for Defendants on that issue was inappropriate at that time. *Sykes I*, 2017 NCBC LEXIS 73, at *46. For purposes of the Motion only, the Court assumes that HNS and the Individual Defendants participate in the North Carolina Market.

**(2)** **The Antitrust Claims require a showing of market power in the North Carolina Market, which Plaintiffs may allege through direct or circumstantial evidence.**

31.    The Court has held that each of Plaintiffs' Antitrust Claims require an appropriate allegation of market power in the North Carolina Market, whether the claim is one for monopolization or monopsonization  *Sykes I*, 2017 NCBC LEXIS 73, at *17–18, *22, *58.  Seller-side market power is the "ability to raise prices above the levels that would be charged in a competitive market," *R.J. Reynolds Tobacco Co. v. Phillip Morris Inc.*, 199 F. Supp. 2d 362, 381–83 (M.D.N.C. 2002) (quoting *NCAA v. Board of Regents of the Univ. of Okla.*, 468 U.S. 85, 109 n.38 (1984)), and buyer-side market power includes the buyer's ability "to lower input prices below competitive levels, which requires the ability to restrict the quantity demanded of the input," and results in higher output prices.  Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy and Monopsony*, 76 Cornell L. Rev. 297, 306 (1991).

32.    Market power may be alleged based on facts that will provide either direct or circumstantial evidence of that power.  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  Direct evidence "generally requires . . . evidence of restricted output and supracompetitive prices," *Sykes I*, 2017 NCBC LEXIS 73, at *61, while circumstantial evidence—"the more common type of proof"—generally contains evidence "pertaining to the structure of the market." *Rebel Oil*, 51 F.3d at 1434.  Circumstantial proof will require at least that a plaintiff properly define a relevant market, show that a defendant owns a dominant share of that market, and show that there are significant barriers to entry to that market. *Id.*; *see also Sykes I*,

2017 NCBC LEXIS 73, at *61 (noting that indirect proof of market power requires proof "of ownership of a dominant share of the relevant market and significant barriers to market entry").

**(3)** **Plaintiffs have failed to specifically allege an output restriction in the North Carolina Market adequate to support a presumption that HNS has market power.**

33. Plaintiffs assert that they have adequately demonstrated a restriction of output of medically-necessary chiropractic services sufficient to infer HNS's market power in the North Carolina Market. (Pls.' Br. Opp. Defs.' Mot. Dismiss Second Am. Compl. 12–14.) More specifically, Plaintiffs argue that their allegations that "tens of millions of dollars of medically necessary care that has not been provided" pursuant to HNS's conduct by itself satisfies their pleading burden. (Pls.' Br. Opp. Defs' Mot. Dismiss Second Am. Compl. 12–13.)

34. Plaintiffs correctly note that "proof of actual detrimental effects, such as a reduction of output, can obviate the need for an inquiry into market power." *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986). Judge Sotomayor while serving on the United States Court of Appeals for the Second Circuit wrote that "[i]f a plaintiff can show that a defendant's conduct exerted an actual adverse effect on competition, this is a strong indicator of market power." *Todd v. Exxon Corp.*, 275 F.3d 191, 206 (2d Cir. 2001).

35. However, again, Plaintiffs fail to account for the differences in how their allegations of output based on market power must be separately viewed in the four markets they allege. After the Court examined Plaintiffs' output-reduction argument

in its August 18, 2017 Order & Opinion, it doubted, but left open the question of, whether the pleadings justified "a presumption that Defendants have, or can be tied to, market power in the North Carolina Market adequate to relieve Plaintiffs of their pleading burden." *Sykes I*, 2017 NCBC LEXIS 73, at \*64. The Court now concludes that Plaintiffs' allegations of output reductions are not sufficient to permit an inference that Defendants have market power in the North Carolina Market.

36. Plaintiffs conflate their allegation of a reduction of output *in markets the Court has rejected* with an allegation of reduction of output *in the North Carolina Market*. Plaintiffs seem to suggest that because Defendants have allegedly caused a reduction in the more narrow markets restricted to *in-network chiropractors*, (*see, e.g.*, Second Am. Compl. ¶¶ 39, 42, 98), it reasonably leads to an inference that Defendants have caused an overall reduction in output among *all chiropractors* in the North Carolina Market.

37. While the Court here has the benefit of market discovery that dispels any such inference, the Second Amended Complaint asserts no facts that suggest more than a shift in output from the in-network insured market to other segments of the larger North Carolina Market, which includes chiropractic services provided out-of-network or to patients who make cash payments or receive services as beneficiaries of various government programs, including workers' compensation. Significantly, the Second Amended Complaint supports this contrary inference when it alleges that approximately half of all licensed North Carolina chiropractors are *not* HNS members. (Second Am. Compl. ¶¶ 28–29.) Three of Plaintiffs' proposed markets

exclude these alternative consumers of chiropractic services, but they must be considered within the North Carolina Market. Without factual allegations to support their argument, Plaintiffs state in conclusory fashion that "Defendants' actions have reduced output and that output is not finding its way back into the market through government insurance or the cash market." (Pls.' Response Br. Concerning Market Power 2).

38. The Court concludes that Plaintiffs do not allege a restriction of chiropractic services in the North Carolina Market sufficient to raise a presumption that the restriction is due to HNS's alleged market power. Accordingly, Plaintiffs are not relieved from pleading more specific facts that may be adequate to support a finding of HNS's market power in the North Carolina Market.

### (4) **Plaintiffs fail to allege specific facts adequate to support a finding of HNS's market power in the North Carolina Market.**

39. The Court inquires whether the Second Amended Complaint alleges facts which may be adequate to define a relevant market, show that a defendant owns a dominant share of that market, and show that there are significant barriers to entry to that market. *Rebel Oil*, 51 F.3d at 1434; *see also Sykes I*, 2017 NCBC LEXIS 73, at \*61; *cf. Sitelink Software, LLC v. Red Nova Labs, Inc.*, 14 CVS No. 9922, 2016 NCBC LEXIS 45, at \*31 (N.C. Super. Ct. June 14, 2016) (holding that to succeed on antitrust claims, a plaintiff must allege some "minimal set of well-grounded factual allegations to support an assertion of market power" in the relevant market).

40.     Plaintiffs' Second Amended Complaint includes the following allegations regarding their claims that HNS has market power within the North Carolina Market:

- The North Carolina Market is a market "in which HNS ha[s] market power." (Second Am. Compl. ¶ 33);

- "HNS and the Insurers through aggregation of ultimate consumers of chiropractic services, and their participation and use of the HNS network, have material market power in the relevant markets." (Second Am. Compl. ¶ 34);

- "By virtue of its exclusive relationships with the Insurers, particularly [Blue Cross], HNS controls . . . a materially significant percentage of . . . the North Carolina Market." (Second Am. Compl. ¶ 46); and

- "HNS through its exclusive contracts with the Insurers has monopsony power in the relevant markets." (Second Am. Compl. ¶ 132.)

Again, these allegations are grouped among the four different markets Plaintiffs allege, three of which the Court has rejected. While Plaintiffs allege that HNS controls a specific percentage of the markets the Court has rejected, (*see, e.g.*, Second Am. Compl. ¶ 46 ("HNS controls 100% of the HNS Market")), Plaintiffs do not allege that HNS controls a specific share of the North Carolina Market.

41. Although "each case turns on a fact-specific inquiry," *SiteLink*, 2016 NCBC LEXIS 45, at *29, federal and state courts in North Carolina have found allegations that a defendant possesses at least fifty percent of a relevant market may be adequate to show that that defendant owns a "dominant share" of the market. *See R. J. Reynolds Tobacco Co.*, 199 F. Supp. 2d at 383 (finding that an alleged 51.3% market share was sufficient to show a defendant's dominant share); *compare DiCesare*, 2017 NCBC LEXIS 33, at *48–50 (finding that an allegation that a defendant possessed "approximately 50%" of the relevant market was sufficient to allege that defendant's dominant share in that market and allowing antirust claims to survive a Rule 12(b)(6) motion), *with Sitelink*, 2016 NCBC LEXIS 45, at *30–31 (holding that an allegation of market share between 35% and 40% was insufficient to survive a Rule 12(b)(6) motion, "even under North Carolina's liberal pleading standard").

42. Arguably, Plaintiffs would have adequately alleged market power in the other more narrow markets had the Court not rejected them. But, an allegation of a specific market share in the narrower and irrelevant markets cannot support a reasonable inference that HNS has market power in the North Carolina Market. *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621 (S.D.N.Y. 2013) (holding that allegations that defendants had a 60% share in the print book market was insufficient to establish market power in the e-book market where the plaintiffs had made no specific allegations regarding the defendants' market share in the e-book market); *see also Top Rank, Inc. v. Haymon*, No. CV 15-

4961-JFW (MRWx), 2015 U.S. Dist. LEXIS 164676, at *22–24 (C.D. Cal. Oct. 16, 2015) (holding that the plaintiff had not adequately pleaded market power in the relevant market in part because the allegations regarding significant market share pertained to markets the court had rejected).

43.     Vague or conclusory allegations of market power in a relevant market may be insufficient to survive a Rule 12(b)(6) motion, even if the market is sufficiently defined. *See, e.g.*, *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008) (holding that an allegation that the defendant ranked "number one" in its industry was insufficient to plead market power); *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 974 (W.D. Tenn. 2004) (dismissing an antitrust claim when the plaintiff made only conclusory allegations regarding the relevant market and described the defendants' market power using only vague descriptors); *Hip Hop Beverage Corp. v. Monster Energy Co.*, No. 2:16-CV-1421-SVW-FFM, 2016 U.S. Dist. LEXIS 167077, at *14–15 (C.D. Cal. Oct. 26, 2016) (holding that an allegation that a defendant controlled "a major percent" of the relevant market was insufficient to allege market power); *Westlake Servs., LLC v. Credit Acceptance Corp.*, No. CV 15-07490 SJO (MRWx), 2015 U.S. Dist. LEXIS 175643, at *18 (C.D. Cal. Dec. 7, 2015) (holding that an allegation that a defendant had a "predominant market share of and market power in" the relevant market was insufficient to plausibly show that the defendant held sufficient market power).

44.     The Court is "fully cognizant that the Motion must be resolved under North Carolina's lenient Rule 12(b)(6) standard rather than the more exacting

federal plausibility standard that governs . . . federal antitrust precedents," but it is also aware that "[e]ven North Carolina's more lenient standard . . . does not allow a party to withstand a Rule 12(b)(6) motion based on conclusory allegations that are not supported by underlying factual allegations." *Sitelink*, 2016 NCBC LEXIS 45, at *17; *see also Window World*, 2016 NCBC LEXIS 82, at *13–14 (rejecting the plaintiffs' argument that market power need not be specifically pleaded to withstand 12(b)(6) dismissal).

45. Based on these principles, the Court concludes that Plaintiffs fail to allege facts adequate to support a finding that HNS has market power in the North Carolina Market. First, as noted above, Plaintiffs do not allege that HNS controls a specific percentage of the North Carolina Market. Second, Plaintiffs cannot rely on allegations of HNS's market share in markets the Court has rejected. Finally, Plaintiffs' general allegations that HNS has "market power," "material market power," "a materially significant percentage," and "monopsony power" in the North Carolina Market, (Second Am. Compl. ¶¶ 33, 34, 46, 132), are conclusory, nonspecific, and insufficient.

46. For these reasons, the Court concludes that Plaintiffs do not adequately allege HNS's market power in the North Carolina Market. Accordingly, the Antitrust Claims against HNS fail and must be dismissed. *See Rick-Mik*, 532 F.3d, at 972 ("A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint.").

## C. Plaintiffs' Claims that Derive from the Antitrust Claims

### (1) Declaratory judgment

47. Plaintiffs' declaratory-judgment claim originally sought ten different declarations, three of which the Court determined that Plaintiffs do not have standing to bring. *Sykes I*, 2017 NCBC LEXIS 73, at \*53 (holding that Plaintiffs lack standing to pursue alleged chapter 58 violations). The Court also ruled that the remaining declaratory judgment claims "should survive dismissal, but only to the extent that they relate to the other surviving [antitrust] claims." *Id.* at \*70. Because the Antitrust Claims do not survive, Plaintiffs' remaining claims for declaratory judgment fail and must be dismissed.

### (2) Conspiracy

48. The Court previously noted that Plaintiffs' civil conspiracy claim should survive Rule 12(b)(6) dismissal only to the extent that the Antitrust Claims survived. *Id.* at \*70; *see also Shope v. Boyer*, 268 N.C. 401, 404–05, 150 S.E.2d 771, 773–74 (1966) (holding that North Carolina does not recognize freestanding civil conspiracy claims). The Antitrust Claims do not survive. Accordingly, Plaintiffs' civil conspiracy claim fails and must be dismissed.

### (3) Claims against Individual Defendants

49. Plaintiffs attempt to impose personal liability on the Individual Defendants by alleging "that the Individual Defendants are either joint tortfeasors who knowingly and purposefully established HNS to inflict harm on Plaintiffs . . . , or co-conspirators who actively participated in the wrongful conduct." *Sykes I*, 2017

NCBC LEXIS 73, at *64–65. The Court earlier concluded that "the claims against the Individual Defendants survive the Motion . . . to the same extent that the claims also survive against HNS." *Id.* at *66. Because all of Plaintiffs' claims against HNS are dismissed, all claims against the Individual Defendants fail and must likewise be dismissed.

### (4) **Punitive damages**

50. North Carolina does not allow freestanding claims for punitive damages. *Shugar v. Guill*, 304 N.C. 332, 335, 283 S.E.2d 507, 509 (1981) ("A civil action may not be maintained solely for the purpose of collecting punitive damages but may only be awarded when a cause of action otherwise exists in which at least nominal damages are recoverable by the plaintiff."). Because the Court has dismissed each of the claims against HNS and the Individual Defendants, Plaintiffs' punitive damages claim must also be dismissed.

## VI.    CONCLUSION

51. After three complaints, two motions to dismiss, fact discovery regarding market definition, a summary judgment motion based on market definition, and two rounds of supplemental briefing, Plaintiffs continue to fail to adequately allege that HNS has market power in the North Carolina Market. Plaintiffs' failure to plead market power in the relevant market is fatal to all the Antitrust Claims, and the failure of the Antitrust Claims is fatal to every other remaining claim. There being no remaining claims, the Motion is GRANTED and the Second Amended Complaint is DISMISSED WITH PREJUDICE.

SO ORDERED, this the 5th day of April, 2018.

/s/ James L. Gale

James L. Gale
Chief Business Court Judge